UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH L. GOODWIN and
CHRISTINE L. GOODWIN,

    Plaintiffs,

v.

File No. 1:12-CV-760

HON. ROBERT HOLMES BELL

CITIMORTGAGE, INC., individually, and as
Trustee of the unknown asset-backed security
which the Mortgage at issue was pooled;
and UNKNOWN HOLDERS, the unknown
holders of said asset-backed security,

    Defendants.
_____/

# **O P I N I O N**

On June 23, 2012, Plaintiffs Kenneth L. and Christine L. Goodwin sued Defendants CitiMortgage, Inc. ("CMI") and unknown holders in St. Joseph County Circuit Court. (Dkt. No. 1, at 2.) The case was removed to federal court on July 23, 2012. Presently before the Court is CMI's motion to dismiss all claims except Count II under Federal Rule 12(b)(6). (Dkt. No. 13, Mot. Dismiss.) For the reasons that follow, Defendant's motion will be granted.

**I.**

On December 18, 2001, Plaintiffs obtained a $94,254.00 loan from Union Federal Bank of Indianapolis (Lender). (Dkt. No. 14, Br. in Supp. of Mot. Dismiss, Ex. 1.) A promissory note evidencing the loan was executed. *Id*. As security for the loan, Plaintiffs granted a mortgage to Lender on the real property located at 51144 Silver Street, Three

Rivers, Michigan 49093. (Dkt. No. 12, First Am. Compl., Ex. A.) Lender assigned Plaintiffs' mortgage to Mortgage Electronic Systems, Inc. ("MERS") on May 11, 2006. (*Id*. at Ex. B.) MERS then assigned the mortgage to CMI. (*Id*. at Ex. G, I.) Following the assignments, Plaintiffs defaulted on their loan payments and CMI initiated foreclosure proceedings. (*Id*. at Ex. H.) Plaintiffs filed this present suit in St. Joseph County Circuit Court and alleged improprieties in the foreclosure of their property. (Dkt. No. 1.) Defendants removed the case to this Court. *Id*.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. "[T]o survive a motion to dismiss [under 12(b)(6)], the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). In reviewing such a motion, the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). As a general rule, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent*, 583 F.3d at 903.

According to the Supreme Court, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 545 (2007) (internal quotations omitted). While detailed factual allegations are not required, the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**III.**

Plaintiffs' complaint contains eleven counts: (1) foreclosure in violation of Mich. Comp. Laws § 600.3204(1) and (3); (2) foreclosure in violation of Mich. Comp. Laws § 600.3204(4), 3205(a), and 3205(c); (3) tortious interference with contractual relations; (4) civil conspiracy; (5) declaratory relief that defendants failed to meet conditions precedent imposed by the mortgage and note; (6) breach of implied duty of good faith and fair dealing; (7) intentional fraud; (8) constructive fraud; (9) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; (10) violation of Michigan's Regulation of Collection Practices Act ("MCPA"), Mich. Comp. Laws § 445.251, *et seq.*; and (11) accounting. Defendants move to dismiss all counts except Count II pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants intend

to file a subsequent motion for judgment on the pleadings or summary judgment on Count II.

**A. Count I: Violation of Mich. Comp. Laws § 600.3204(1) and (3)**

Plaintiffs make several arguments in support of their contention that CMI lacked the authority to foreclose on the property. None of Plaintiffs' arguments state a plausible claim for relief.

First, Plaintiffs, citing Mich. Comp. Laws § 600.3204, allege that CMI could not foreclose because Union Federal Bank of Indianapolis never assigned an interest in the mortgage to any third party. (Compl. ¶ 61.) In alternative, Plaintiffs argue that if this Court finds that there is a chain of title, the appropriate assignee is Waterfield, which went out of business in 2010. (*Id*. ¶ 63.) According to Plaintiffs, CMI clearly does not have a property interest to initiate foreclosure proceedings. Plaintiffs lack standing to bring this argument. "[A] litigant who is not a party to an assignment lacks standing to challenge that assignment." *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010).[1]

Even if Plaintiffs did have standing to challenge the assignment, their argument is without merit. A valid record chain of title exists. Union Federal Bank first assigned the mortgage to MERS and MERS later assigned the mortgage to CMI on February 22, 2012.

---

[1]Plaintiffs baldly assert that they fear the "possibility of double recovery." (Compl. ¶ 60.) While a "genuine claim" that a plaintiff might be subject to double recovery can provide that plaintiff with standing to challenge an assignment between two third-parties, *Livonia*, 399 F. App'x at 102, this bald assertion by Plaintiffs is not such a genuine claim; Plaintiff has not put forth a plausible argument that a party other than CMI also claims rightful ownership of the mortgage.

4

(Compl., Exs. B, G.) A second assignment from MERS to CMI was recorded two weeks later. (*Id*. at Ex. I.) The March 5, 2012 assignment merely corrected the language of the assignment and did not alter the record chain of title. *Id*. Consequently, Plaintiffs' contention that CMI lacks the property interest necessary to initiate foreclosure is defeated by the plain terms of the March 5, 2012 assignment. *Id*.

Plaintiffs also argue that the signatories on the three assignments in the record chain of title leading to CMI were not signed by real persons but by a robo-signer. (Compl. ¶¶ 68, 78, 89.) Plaintiffs' sole support for this argument is that the signatures of McGowan, Gerholdt, and White were wildly different on various documents. (*Id*. ¶¶ 70, 73, 91, Exs. D, K.) In the Court's estimation, the "wildly" different signatures were, in fact, substantially similar. (*See id*.) Plaintiffs have provided no other factual support for this claim and the slight differences in the signatures do not constitute sufficient factual matter to state a plausible claim of fraudulent assignment. *See Iqbal*, 556 U.S. at 678; *see also Block v. BAC Home Loans Servicing LP*, No. 11-11181, 2012 WL 2031640, at *4 (E.D. Mich. June 6, 2012) ("[V]ague and speculative assertions of what has been labeled as 'robo-sigining' are insufficient to state a plausible claim of fraud or irregularity.").

Finally, Plaintiff contends that the mortgage and note were pooled together with a number of other loans and sold as an asset-back security. According to Plaintiffs, this asset-backed security was not sold in accordance with the terms of the Pooling and Service Agreement ("PSA") which governs relations between Union, CitiMortgage, and the holders

5

of the asset-backed security. (Compl. 98-99.) Plaintiffs argue that the assignment of the mortgage is invalid because Defendants did not comply with the conditions of the PSA. This argument is without merit. Even if there is a pooling and service agreement, Plaintiffs are not a party to it and have no standing to challenge its terms:

> Plaintiff also raises several arguments relating to whether the Court was misled about certain transfers of the Loan Documents [including whether a PSA was complied with]. . . . [T]he parties to any assignments appear to have ratified or otherwise acquiesced to the transfers and are not challenging them here or attempting to assert any rights in the Loan Documents. Moreover, as discussed below, by virtue of the fact that Defendant is the holder of the Note, it also holds the Mortgage by operation of law. Finally, regardless of what contracts exist between which entities, Plaintiff was not and is not a party to any of those contracts (including the assignments), and lacks standing to challenge their validity or the parties' compliance with those contracts here.

*Livonia,* 717 F. Supp. 2d at 746-47.

Plaintiff's poorly supported arguments and fanciful allegations are insufficient to survive a motion to dismiss. Accordingly, Count I will be dismissed.

**B. Count III: Tortious Interference with Contractual Relations**

Count III alleges that unknown holders caused CMI to breach Plaintiffs' contract. (Compl. ¶ 128.) Plaintiffs reason that these unknown holders caused the contractual breach to "cash in on a private mortgage insurance policy." (*Id.*)

Intentional interference with contractual relations requires: (1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant." *Meyer v. Citimortgage, Inc.*, No. 11-13432, 2012 WL 511995, at *3 (E.D. Mich. Feb. 16, 2012) (quoting *Mahrle v. Danke*, 549 N.W.2d 56 (Mich. Ct. App. 1996)). Tortious interference requires: "the existence

of a valid business relation . . . or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted." *Id.*

Plaintiffs' complaint does not identify how any of the terms of the agreement were breached. Failure to allege a material element requires Count III's dismissal. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 903. However, Plaintiffs assert breach has been appropriately alleged in the complaint, noting that their own default on loan payments constitutes a breach. (Dkt. No. 19, Resp. 13.) Plaintiffs' argument is absurd. Following Plaintiffs' assertion to its logical conclusion, unknown holders instigated Plaintiffs' own admitted default out of a desire for CMI to hasten its foreclosure process. Plaintiffs' position fails the straight-face test. Further, Plaintiffs make no effort to tie their admitted breach to an "unjustified instigation of the breach by the defendant." *Meyer*, 2012 WL 511995, at *4. The complaint is devoid of any facts showing an unjustified instigation.

Plaintiffs' tortious interference claim fails to allege all material elements of the offense. Further, the complaint does not contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, Count III will be dismissed.

**C. Counts IV, VII, & VIII: Intentional or Constructive Fraud, and Conspiracy to Commit Fraud**

Plaintiffs argue that CMI committed either intentional or constructive fraud. Plaintiffs

7

further contend that CMI, along with unknown holders conspired to commit intentional or constructive fraud.

**1. Intentional or Constructive Fraud**

Plaintiffs' fraud claim asserts that CMI and unknown holders forged the assignments of their mortgage in an effort to "fabricate a phony paper trail that would allow Defendants to get away with an illegal foreclosure . . . ." (Compl. 156.) This allegation is dependent on the assignment from MERS to CMI being fraudulent, a claim that this Court has already deemed to be frivolous. *See supra* Part 3(A). However, even if Plaintiffs' assignment claim was meritorious, they have not properly alleged a claim for fraud.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed R. Civ. P. 9(b). To make out a fraud claim, a plaintiff "must at a minimum allege the time, place and contents of misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). Additionally, the pleading must "allege with specificity who had made the particular misrepresentations and when they were made." *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992).

Plaintiffs utterly fail to satisfy the pleading requirements. Plaintiffs have not alleged who made the misrepresentations or the time that the representations were made with any specificity. Plaintiffs continue to contend that some unknown holders are in part responsible for the fraudulent assignment process. The complaint is too devoid of fact to meet the

8

heightened pleading standard for fraud. Counts VII and VIII will be dismissed as a result.

### 2. Conspiracy to Commit Fraud

Plaintiffs further contend that CMI conspired to commit the fraud alleged with other unknown holders. In addition to conspiracy to commit fraud, Plaintiffs contend that CMI and unknown holders conspired to commit every tort enumerated in their complaint.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Meyer,* 2012 WL 511995, at *4 (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351 (Mich. Ct. App. 1992). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Id.* (quoting *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569 (Mich. Ct. App. 2003) (internal quotations omitted). Plaintiffs are unable to prove their claims of fraud. No claim for conspiracy to commit fraud exists as a result. Further, as discussed in detail here and throughout this opinion, Plaintiffs fail to state a viable claim for any actionable tort. This Court cannot allow Plaintiffs' conspiracy claims to exist in the air. Consequently, Count IV will be dismissed.

### D. Counts: IV, IX, & X: Violation of the FDCPA and the MCPA; Conspiracy to Violate the FDCPA and the MCPA

Plaintiffs next assert that CMI's foreclosure upon their property violated the Fair Debt Collection Practices Act ("FDCPA") and Michigan's Regulation of Collection Practices Act ("MCPA"). Plaintiffs again contend that CMI and unknown holders conspired to violate

these statutory provisions.

### 1. Violation of the FDCPA

The FDCPA only applies to "debt collectors." *See* 15 U.S.C. § 1692. According to the statute, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). Notably, "creditors are not subject to the FDCPA when collecting their accounts." *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003); *see also Partlow v. Aurora Loan Servs., L.L.C.*, No. 11-12940, 2012 WL 12766, at *5 (E.D. Mich. Jan. 4, 2012) ("It is well settled that the provisions of the FDCPA apply only to professional debt collectors, not creditors or mortgagors.").

While Plaintiffs allege that CMI is a "debt collector" (Compl. ¶ 169.), this allegation is patently untrue according to the statutory definition. Union Federal Bank of Indianapolis, the original owner of Plaintiffs' debt, assigned its interest in the debt to MERS who then assigned the interest to CMI. As previously discussed, Plaintiffs' allegations that these assignments were fraudulent is frivolous. Consequently, Plaintiffs' debt is owed directly to CMI, and CMI is a creditor/mortgagor not subject to the FDCPA.

Count IX will be dismissed.

### 2. Violation of MCPA

Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake," is applicable to all allegations of fraud, including allegations of fraud under the MCPA. *See Zanger v. Gulf Stream Coach, Inc.*, No. 05-72300, 2005 WL 3416466, at *10 (E.D. Mich. Dec. 13, 2005). Plaintiffs allege seven violations of the MCPA, four of which allege fraud: (1) communicating with Plaintiffs in a misleading or deceptive manner; (2) making a deceptive statement in a communication to collect a debt; (3) misrepresenting in a communication with Plaintiffs the legal status of a legal action being taken and the legal rights of Plaintiffs; and (4) communicating with Plaintiffs without accurately disclosing the caller's identity. (Compl. ¶ 176(a)-(d).) Plaintiffs provide no details in these incredibly vague allegations. Plaintiffs do not provide the time or contents of the misrepresentations, nor do Plaintiffs provide who made the misrepresentation or when. Indeed, beyond the recitation of general behavior the MCPA prohibits, Count X is devoid of details.

As for the alleged violations of the MCPA which do not involve fraud – (1) communicating with Plaintiffs when Plaintiffs were actively represented by an attorney; (2) using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversations repeatedly and at unusual times; and (3) failing to implement a procedure designed to prevent a violation by an employee – Plaintiffs merely quote the statute. *See* Mich. Comp. Laws § 445.252(h), (n), (q). Beyond quoting subsections (h), (n), and (q) from the statute, Plaintiffs make no allegations regarding CMI's conduct. Even under the lower pleading standard for non-fraud claims, this

11

pleading is woefully inadequate. A plaintiff must provide more than "a formulaic recitation of a cause of action's elements" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555; *see also Brady v. Chase Home Fin., LLC*, No. 1:11–CV–838, 2012 WL 1900606, at *10 (W.D. Mich. May 24, 2012) (Quist, J.) (dismissing a plaintiff's MCPA claim because the allegations "merely parrot certain provisions of the statute" and "fail to provide any factual 'meat' for her bare-bones claim").

Count X will be dismissed as a result.

3. **Conspiracy to Violate the FDCPA and the MCPA**

Consistent with this Court's dismissal of count IV, the conspiracy claims pertaining to the violation of the FDCPA and the MCPA are without merit. Again, Plaintiffs have not shown any underlying tort. Plaintiffs' failure to properly allege a violation of the FDCPA or MCPA necessarily precludes their corresponding conspiracy claims. *See Meyer*, 2012 WL 511995, at *4.

**E. Count V: Declaratory Relief**

In Count V, Plaintiffs seek declaratory relief that CMI failed to meet the conditions precedent imposed by the mortgage and the note. Plaintiffs allege that the terms of their mortgage include all federal regulations. (Compl. ¶ 137.) Specifically, Plaintiffs allege that CMI violated HUD regulation 24 C.F.R. § 203.604(b) when they failed to meet face-to-face with the Plaintiffs prior to foreclosure. (Compl. ¶ 139.) Additionally, Plaintiffs contend that the C.F.R. requires mortgagees to attempt loss mitigation on loans, including the Home

Affordable Modification Program ("HAMP") and other mortgage modifications (Compl. ¶ 143.) Plaintiffs do not cite which section of the C.F.R. requires such action. Regardless, according to Plaintiffs, CMI violated this federal regulation and the terms of the mortgage agreement by failing to attempt loss mitigation.

Accepting the truth of Plaintiffs' factual allegations, there is no private cause action under these HUD regulations. As the Sixth Circuit has explained, "no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies." *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989). State courts have similarly recognized that no private right of action exists for the violation of HUD regulations:

> "The federal courts have determined that the HUD lenders handbook, the foundation of the defense, is merely a statement of HUD policy, which does not have the force of law and which does not establish procedural prerequisites to foreclosure. The handbook and regulations "deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow."

*Mfrs. Hanover Mortg. Corp. v. Snell*, 370 N.W.2d 401, 404 (Mich. Ct. App. 1985) (citations omitted); *see also In re Estate of Olson*, No. 283818, 2009 WL 3103841, at *4 (Mich. Ct. App. Sept. 29, 2009) (affirming trial court's citation of *Snell* "for the proposition that a violation of HUD guidelines does not give a mortgagor an independent cause of action to void the mortgage").

Plaintiffs' alleged HUD violations provide no private right of action. Consequently, no declaratory relief will be given and Count V will be dismissed.

**F. Count VI: Breach of Implied Duty of Good Faith and Fair Dealing**

Continuing their string of frivolous claims, Plaintiffs allege that CMI breached their implied duty of good faith and fair dealing because CMI failed to modify Plaintiffs' loan in accordance with HAMP and/or other loss mitigation programs. (Compl. ¶ 151.)

"Michigan does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself." *McLiechey v. Bristol West Ins. Co.*, 408 F. Supp. 2d 516, 522 (W.D. Mich. 2006) (Bell, J.) (quoting *Liggett Restaurant Group, Inc. v. City of Pontiac*, No. 256571, 2005 WL 3179679, at *1 (Mich. Ct. App. Nov. 29, 2005)). However, if a contract explicitly leaves the manner of a party's performance to its discretion, a breach of contract claim asserting violation of the implied duty of good faith and fair duty is permissible. *Id.* ("Breach of contract actions based upon the breach of an implied covenant of good faith and fair dealing are limited to contracts where a contractual term leaves the manner of performance to one party's discretion."); *see also Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) ("An implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion.").

Count VI is presented as a breach of contract claim. Unfortunately, Plaintiffs have not pointed to any contractual provision where Union Federal Bank of Indianapolis promised to exercise discretion in the loan modification determination. In fact, the discretion Plaintiffs

14

allege Defendants possessed was expressly non-contractual: "In the instant action, as described above, Defendants had the discretion to modify Plaintiffs' loan in accordance with HAMP and/or other loss mitigation programs." (Compl. ¶ 151.) Neither the mortgage or the note contains a reference to the Home Affordable Modification Program or any other type of loan modification program. Consequently, no claim for breach of implied duty of good faith and fair dealing has been raised.

Count VI will be dismissed.

**G. Accounting**

Finally, Plaintiffs seek an accounting because CMI "muddled the foreclosure process" by "misappropriating funds paid by Plaintiffs" and "failing to credit their account accordingly." (Compl. ¶ 180.) Plaintiffs cannot bring such an accounting claim.

An accounting "is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate." *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972). "The burden of proof is on plaintiff to show the inadequacy of the legal remedy" and "Michigan courts have long held that an accounting in equity is unnecessary where discovery is sufficient to determine the amounts at issue." *Wilson v. Cont'l Dev. Co.*, 112 F. Supp. 2d 648, 663 (W.D. Mich. 1999) (Bell, J.). "The law is clear that an 'accounting may not be had where the action is for a specific sum due under a contract.'" *Barkho v. Homecomings Fin., LLC*, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009) (quoting *Brown v.*

15

*Brodsky*, 81 N.W.2d 363, 366 (Mich. 1957)). In *Barkho*, the court dismissed a claim for an accounting similar to Plaintiffs' claim:

> Here, the Plaintiff's claims are based entirely on the amount due under the mortgage note which, in essence, is a contract between the parties. In addition, the Plaintiff's complaint does not support an inference that the transaction at issue is so complex that ordinary discovery procedures would be inadequate to discern the amount in controversy. Without a showing of the necessity of invoking the equitable jurisdiction of the Court to order an accounting, this claim must be dismissed.

*Id.*; *see also Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 847 (E.D. Mich. 2010) ("An accounting is not available where the action is for specific amount due under the contract."); *West v. Wells Fargo Bank, N.A.*, No. 2:12–cv–13572, 2013 WL 3213269, at *6 (E.D. Mich. June 26, 2013) ("[A]n accounting is an extraordinary, equitable remedy that is not permitted when a remedy at law is available and, moreover, is inappropriate in cases regarding amounts due under a contract, such as a note or mortgage."); *Colbert v. Fed. Nat'l Mortg, Ass'n*, No. 12–13844, 2013 WL 1629305, at *13 (E.D. Mich. Apr. 16, 2013) ("Because the sums due under a mortgage and note can be determined by the parties' contractual agreement, an accounting is unavailable.").

Here, the Plaintiffs' claim for an accounting merely seeks a determination of the amount owed under their mortgage. Adequate legal remedies are available and Count XI must be dismissed as a result.

**IV.**

For the reasons stated above, Defendants' motion to dismiss all claims except for Count II will be granted.

An order and judgment consistent with this opinion shall be entered.


Dated: August 19, 2013                                          /s/ Robert Holmes Bell
                                                                ROBERT HOLMES BELL
                                                                UNITED STATES DISTRICT JUDGE